[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 11-12099
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
OCTOBER 21, 2011
JOHN LEY
CLERK

D.C. Docket No. 3:07-cv-01031-MHT-WC

DANIEL JOSEPH GRIDER,
THE FOURTH QUARTER, INC.,
an Alabama corporation, d.b.a. The Skybar,

Plaintiffs,

PATRICK JAMES GRIDER,

Plaintiff-Appellant,

THE GRID, INC.,
an Alabama corporation, f.k.a. The Highlands,
d.b.a. Pulse, et al.,

Plaintiffs,

versus

CITY OF AUBURN, AL,
an Alabama Municipal corporation,
WILLIAM HAM, JR.,
JAMES TREY NEAL, III,
JASON CROOK,
CHRISTOPHER CARVER,
in their individual capacity only, et. al.,

Defendants-Appellees.

———————————————

Appeal from the United States District Court
for the Middle District of Alabama

———————————————

(October 21, 2011)

Before TJOFLAT, CARNES and HULL, Circuit Judges.

PER CURIAM:

After a jury trial, Plaintiff Patrick Grider appeals the verdict and judgment

entered in favor of Defendant Officer Christopher Carver on Grider's malicious

prosecution claims under 42 U.S.C. § 1983 and Alabama state law.  Grider argues

that the district court erred in failing to give a requested jury instruction on the

burden of proof for these claims.  We affirm.

## I. BACKGROUND AND PROCEDURAL HISTORY

Since 2001, bars owned by Grider and his brother, including The Skybar

Café ("Skybar"), have been the subject of private complaints and warnings by the

City of Auburn Police Department ("APD") for serving minors alcohol, fighting,

and serving alcoholic beverages after 2:00 a.m. on Sunday mornings.  In 2007,

Grider[1] sued the City of Auburn (the "City") and ten City employees in federal

---

[1]Plaintiff Grider's brother, Daniel Grider, and The Fourth Quarter – a company owned by
the Griders – were also plaintiffs in the district court.  However, Daniel Grider and The Fourth
Quarter were voluntarily dismissed as appellants in this second appeal.  Patrick Grider remains
the sole appellant.

district court under 42 U.S.C. § 1983 and Alabama state law. Grider alleged that

the City was enforcing its laws in a discriminatory manner in order to harass

Grider and put Skybar out of business and that several City employees, including

Officer Carver, maliciously prosecuted Grider for a fabricated charge of bribing a

public official. This is now the second appeal in this case.

## A. First Appeal

In the first appeal, multiple defendants, including Officer Carver, appealed

the district court's denial of qualified immunity and state-law immunity. We

affirmed the denial of immunity to Officer Carver on Grider's malicious

prosecution claims under § 1983 and state law, but we reversed the denial of state-

law immunity to the other defendants on the remaining claims. See Grider v. City

of Auburn, 618 F.3d 1240, 1269 (11th Cir. 2010). We remanded for a trial on the

malicious prosecution claims against Officer Carver.[2]

## B. Trial on the Malicious Prosecution Claims

---

[2]Although we also rejected Officer Carver's and Officer Jason Crook's claims to immunity on Grider's tortious interference claims under state law, the parties subsequently agreed to dismiss the tortious interference claims. Thus, these claims are not before us in this second appeal.

Following remand, the district court conducted a jury trial on Plaintiff Grider's malicious prosecution claims against Officer Carver for charging Grider with bribery of a public official.

At trial, Plaintiff Grider called Officer Carver as the first witness. Officer Carver testified that, on September 29, 2005, he and his partner, Officer Jason Crook, were assigned to foot patrol in downtown Auburn. Another officer directed Officers Crook and Carver to investigate possible alcohol violations at Skybar. Officers Crook and Carver proceeded to the back of Skybar, where they saw people drinking but did not see any sales of alcoholic beverages.

According to Officer Carver, Grider confronted the officers and showed the officers three $50 bills and told them that if they let Grider "slide there was a dollar bill for each of [them]." Grider placed the money on the ground and walked away. Officer Carver testified that he was "shocked" and immediately called his supervisor to report the attempted bribery. Officer Carver's supervisor told him to collect the money, enter the money into evidence, and complete a report of the incident. Officer Carver complied and did not arrest Grider that night.

The next day, Officer Carver signed an "Affidavit Charging Crime," charging that Grider attempted to bribe Carver with $150 in folded currency. Carver's affidavit also states that the bribery was attempted so Carver would not

4

enforce "Auburn City ordinance 3-1(11), which The Sky Bar was in violation because it was still open serving alcohol after 2am."[3] However, the arrest warrant, signed by the "Clerk, District/Circuit Court," charged Grider with a violation of Ala. Code § 13A-10-61 (the bribery statute),[4] and mentions no underlying violation of a city alcohol ordinance. Officer Carver consistently testified that Grider placed the three $50 bills on the ground as a bribe. As to Skybar's serving alcohol, Officer Carver acknowledged at trial that he had not seen anyone actually served alcohol at Skybar that night; he merely saw people who already had drinks in their hands. Officer Crook's testimony largely confirmed Officer Carver's.

For his part, Plaintiff Grider testified and denied ever offering the officers money to bribe them not to enforce any law. Grider testified that, on the night of the incident, Skybar was not admitting any new customers. Although a few people remained at the bar, most of them were employees. Grider testified that Dale Earnhardt, Jr., was in the bar that night and that he was "hanging out" with Mr.

---

[3]Officer Carver's affidavit, which was admitted into evidence without objection at the beginning of trial, incorrectly states that the events occurred on September 19, 2005, instead of September 29, 2005.

[4]Section 13A-10-61(a)(1) of the Alabama Code states a person commits bribery if "[h]e offers, confers or agrees to confer any thing of value upon a public servant with the intent that the public servant's vote, opinion, judgment, exercise of discretion or other action in his official capacity will thereby be corruptly influenced . . . ." The arrest warrant appears on the same page, but below Officer Carver's affidavit.

Earnhardt when an employee informed Grider that two police officers were in the back alley. Grider walked outside behind the bar to talk to the officers. Grider asked the officers whether everything was okay, and the officers responded that the back door to the bar was ajar. Grider responded that he knew about the problem and that no one had broken in.

Plaintiff Grider then said that Mr. Earnhardt was in the bar and that some people might be drinking. Grider clarified that the bar was no longer serving alcohol. Officer Carver then said either "You don't know what's about to happen to you" or "You know what's about to happen to you." Grider responded that the officers were welcome to go into the bar to check that no one was being served alcohol. However, Grider asked the officers to wait to come in so "it wouldn't be insinuated that [Grider] . . . brought the police in." Nevertheless, Grider told the officers, "It would be great if you didn't go in." Grider then walked back into the bar. Grider denied putting any money on the ground and denied promising the officers anything. Grider first learned about the bribery accusation at the preliminary hearing on the bribery charge.

During the defense case-in-chief, Officer Carver testified about what happened at the preliminary hearing before the state magistrate judge on the warrant for Grider's arrest. Officer Carver's understanding was that the state

6

magistrate judge dismissed the charge for lack of probable cause because he and Officer Crook "didn't articulate observing a specific alcohol violation, meaning [they] didn't articulate it at the preliminary hearing that [they] saw somebody at the Skybar sell, serve or provide alcohol, that there was no violation and, therefore, no underlying offense for the bribery to have influenced."

The magistrate judge's written order – which was admitted at the beginning of trial without objection – states: "There DOES NOT exist probable cause to believe that [Grider] committed the offense as charged in the Complaint,[5] and as such, the Complaint is DISMISSED, and [Grider] is DISCHARGED."

Before resting, Officer Carver moved for admission into evidence of a portion of the transcript from the preliminary hearing before the state magistrate judge. According to the transcript, the state magistrate judge stated that there was probable cause to believe that Grider bribed a police officer "to prevent an investigation of an alcohol offense" but there was no probable cause to believe that Grider bribed an officer "so he would not enforce an [alcohol] ordinance" as there was no evidence Skybar was committing that alcohol violation that night.[6]

---

[5]No "complaint" appears in the record. The state magistrate judge was apparently referring to Officer Carver's affidavit, which prompted the issuance of a warrant for Grider's arrest.

[6]The state magistrate judge's full statement was as follows:

Grider objected to the admission of the transcript on several grounds, and the district court sustained Grider's objection and refused to admit the transcript. The district court noted that the transcript was irrelevant because the jury "should be assessing the issue of probable cause . . . not based on whether the State found it or didn't find it, but based on what the evidence showed in this trial."

At the charge conference, Plaintiff Grider argued that the state magistrate judge had dismissed the charge for lack of probable cause as to bribery and thus the burden of proof shifted to Officer Carver to prove that he had probable cause to charge Grider with bribery. Grider requested the following Alabama Pattern Jury Instruction for both his state and federal malicious prosecution claims:

> Where the Plaintiff is discharged by a Court of law for lack of probable cause, such fact is *prima facie* evidence of lack of probable cause for instituting the prosecution by the Defendant.
>
> This presumption of the lack of probable cause places the burden of proof on Defendant Carver to reasonably satisfy you from the

---

If the defendant was charged with bribing a police officer to prevent an investigation of an alcohol offense, which they were certainly entitled to do, I think the issue of probable cause would be met, but it doesn't. The complaint states that [Grider] was charged with bribing a public official so he would not enforce an [alcohol] ordinance which there's no evidence he was committing. So as the case is before this Court, at this time, I don't see where I have any choice but to say there's no probable cause to believe this offense, as described in the complaint, has been committed. And that will be the Court's ruling.

evidence that he had probable cause for instituting the prosecution against Mr. Grider.[7]

Declining to give the requested Alabama instruction as to the state-law claim, the district court reasoned, inter alia, that the state magistrate judge never reached "the issue of bribery." The district court also found that the Alabama instruction would not apply to the federal malicious prosecution claim for similar reasons and for the additional reason that the court could find no similar instruction requiring shifting the burden of proof under federal law. Grider objected that the Alabama instruction should be given on both the federal and state malicious prosecution claims and argued that Grider never stipulated as to "why probable cause was determined not to exist." The district court overruled the objections.

Accordingly, the district court instructed the jury without giving Plaintiff Grider's requested burden-shifting jury instruction. The district court instructed the jury that Grider had the burden of proof on each element of his malicious prosecution claims. Additionally, the court noted, "The fact that the state court

---

[7]This instruction derives from Alabama Pattern Jury Instruction 24.21, which states:
> (*Where the plaintiff was discharged by the committing magistrate*) or (*Where [the] Grand Jury fails to indict after investigating the charge against the plaintiff*), such fact is prima facie evidence of a want of probable cause for instituting the prosecution by the defendant.
>
> This presumption of the want of probable cause places the burden of proof on defendant to reasonably satisfy you from the evidence that defendant had probable cause for instituting the prosecution against the plaintiff.

Ala. Pattern Jury Instructions Civil 24.21 (2d ed. 2010).

9

may or may not have found probable cause is not determinative. You, the jury, must independently decide that issue from the evidence presented in this case."

The jury returned a verdict for Officer Carver and against Grider on both the state and the federal malicious prosecution claims. The district court entered judgment for Officer Carver in accordance with the jury's verdict, and Grider timely appealed.

## II. DISCUSSION

On appeal, Plaintiff Grider argues that the district court erred in failing to give the burden-shifting jury instruction because the instruction accurately stated Alabama law on his state-law claim for malicious prosecution. Grider argues that he suffered prejudice because the district court's instructions placed the burden of proof on the wrong party and, if properly instructed, the jury could have found Officer Carver liable for malicious prosecution. Regarding the federal malicious prosecution claim, Grider argues that this Court should adopt the Alabama burden-shifting framework "as an accurate statement of federal common law."[8]

"We review jury instructions <u>de novo</u> to determine whether they misstate the law or mislead the jury to the prejudice of the party who objects to them." <u>United</u>

---

[8]On appeal, Grider also argues that the district court erred in finding that Grider waived a state-law conspiracy claim and by dismissing his § 1983 claim against the City of Auburn. We conclude that these arguments wholly lack merit, and we decline to discuss them further.

States v. Campa, 529 F.3d 980, 992 (11th Cir. 2008). However, "the standard is deferential, [and] [a]s long as the instructions accurately reflect the law, the district court is afforded wide discretion as to the style and wording employed in the instructions." Morgan v. Family Dollar Stores, Inc., 551 F.3d 1233, 1283 (11th Cir. 2008) (citations and quotation marks omitted).

"We examine the challenged instructions as part of the entire charge, in view of the allegations of the complaint, the evidence presented, and the arguments of counsel, to determine whether the jury was misled and whether the jury understood the issues." Id. (alteration and quotation marks omitted). If the instructions, "taken together, properly express the law applicable to the case, there is no error even though an isolated clause may be inaccurate, ambiguous, incomplete or otherwise subject to criticism." Somer v. Johnson, 704 F.2d 1473, 1477-78 (11th Cir. 1983) (quotation marks omitted). We reverse only if "left with a substantial and ineradicable doubt as to whether the jury was properly guided in its deliberations." Id. at 1478 (quotation marks omitted).

After review of the record, we conclude that Grider has not shown reversible error in the district court's declining to give his particular requested burden-shifting instruction. Although Grider's requested instruction was an accurate statement of Alabama law in the abstract, Grider failed to establish that the

11

requested instruction was applicable to the factual circumstances of his case. Although the district court did not admit the transcript for the jury to review, the district court was entitled to consider the transcript in deciding the basis for the state magistrate judge's dismissal and thus how to charge the jury as to the burden of proof.

The transcript showed that the state magistrate judge's dismissal focused on the lack of evidence that Grider actually violated the city alcohol ordinance and not on whether Grider actually placed the $150 on the ground in an attempt to bribe Officers Carver and Crook. In fact, the state magistrate judge stated that he thought there was probable cause to believe that Grider bribed an officer "to prevent an investigation of an alcohol offense." Given the state magistrate judge's narrow reason for dismissing the complaint and its statement that there was probable cause for the bribery (albeit for a different motive on Grider's part), we conclude that Grider did not sufficiently establish that the district court was required to give Grider's burden-shifting instruction on the malicious prosecution claim under Alabama law. In other words, we cannot say the district court abused its discretion in how it read the state magistrate judge's ruling.

As to Plaintiff Grider's argument that we should adopt the Alabama burden-shifting framework as federal common law, we decline to address the issue

12

because, as stated above, we conclude that the requested instruction was inapplicable in light of the factual circumstances of this case. Grider had the burden of proof on each element of his malicious prosecution claims, and the district court correctly instructed the jury to determine the existence of probable cause based on the trial evidence, which included the magistrate judge's dismissal order as well as testimony of all the witnesses to the alleged bribery. In fact, the district court aided Grider's case by sustaining his objection to the jury's seeing the transcript of the state magistrate judge's explanation of the more complete basis for the dismissal. The jury charge, as a whole, correctly framed the issue as a swearing match between Grider and the police officers, and we find no reason to disturb the jury's verdict in this case.[9]

**AFFIRMED.**

---

[9]Grider's request for oral argument is DENIED.